COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

INTEGRATED SEMICONDUCTOR §
SERVICES, INC.,                                         No. 08-08-00146-CV

§

      Appellant,                                        Appeal from the

§

v.                                                          193rd Judicial District Court

§

                   of Dallas County, Texas

AGILENT TECHNOLOGIES, INC.,        §
N/K/A AVAGO TECHNOLOGIES U.S.,                  (TC# 06-06205-L)
INC.,                                                       §

      Appellee.

## **O P I N I O N**

Integrated Semiconductor Services, Inc. ("ISS") filed this restricted appeal following the

trial court's entry of a post-answer default judgment in favor of Avago Technologies U.S., Inc.

("Avago").  In a single issue, ISS contends the trial court granted the amended motion to

withdraw immediately before trial, and by granting a default judgment in violation of Rule 10 of

the Texas Rules of Civil Procedure and Rule 4.02 of the Dallas County Local Rules.  We will

affirm the trial court's judgment.

This suit is a breach of contract and contractual interference action.  Avago contracted to

purchase semiconductor manufacturing equipment through Mr. Jesse Bell of JC Technology

Sales.[1]  At the time Mr. Bell first contacted Avago about purchasing the equipment, Mr. Bell was

a representative of ISS which manufactured the equipment Avago wished to buy.  On August 10,

---

[1] Avago Technology was a subdivision of Agilent Technologies, Inc. until 2005.  Agilent
Technologies, Inc. is not a party to this appeal.

2005, Avago received a price quote for an "LAM A6 Alliance TCP 9400PTX Process Module" from Mr. Bell. According to the quote, Mr. Bell could deliver the LAM equipment in twelve weeks for a total price of $775,000. Based on Mr. Bell's association with ISS, Avago understood that ISS would be manufacturing the equipment and that ISS was capable of meeting Avago's requirements. Avago worked exclusively with Mr. Bell to order the LAM equipment. Avago issued a purchase order for the LAM equipment to Mr. Bell on October 26, 2005. Avago paid $465,000 to Mr. Bell at the time it ordered the equipment. This payment constituted 60 percent of the total purchase price.

ISS and Mr. Bell failed to deliver the equipment on time. Six weeks after the agreed delivery date, Avago employees traveled to ISS's facility to inspect the equipment. They found the equipment was not complete, and that it failed to meet Avago's specifications. Avago representatives scheduled a second inspection for April 19 based on Mr. Bell's representations that the equipment would be completed at that time. However, on the morning Avago employees were scheduled to travel to the ISS facility, an ISS representative contacted Avago and informed the buyer that the equipment was still not in final form. This was the first communication Avago received directly from ISS.

Several more weeks and delivery dates passed, and on June 14, 2004, ISS conducted a third inspection of the equipment at the ISS facility. Following this inspection, Avago concluded that ISS was incapable of manufacturing the equipment to its specifications. The following week, Avago notified Mr. Bell that he was in material breach of the purchase order contract. Mr. Bell was given ten days to cure the breach before Avago terminated the contract and began seeking legal action. The equipment was never delivered, and Avago's pre-payment was not

returned.

On June 29, 2006, Mr. Bell filed suit against ISS for breach of contract, alleging the manufacturer failed to deliver the LAM equipment. On July 20, 2006, Mr. Bell amended his petition to include Avago as a defendant. Mr. Bell alleged that Avago was working with ISS to "cut [him] out of the deal," and sought the benefits of the original contract as damages. On April 5, 2007, Avago filed its first amended petition and asserted a counter-claim for breach against Mr. Bell, and a cross-claim against ISS alleging it was a third party beneficiary to the contract between ISS and Mr. Bell.

On March 20, 2007, the parties filed a joint motion for continuance. The motion represented to the trial court that the parties had been discussing an appropriate scheduling order and had agreed to a September 11, 2007 trial setting. They requested the court set the case for trial pursuant to their agreement. The trial court granted the request on July 12, 2007, by signing a scheduling order setting the case for trial on September 11, 2007.

On August 21, 2007, ISS's attorneys filed a motion to withdraw from the case. The trial court denied the motion by written order on August 24, 2007. On September 4, 2007, ISS's attorneys filed an amended motion to withdraw. The amended motion represented that "good cause" existed to terminate the attorney-client relationship, and that termination was "in the best interest of all parties." The motion stated further that ISS had been notified of the motion and its right to object to withdrawal by regular and certified mail. Finally, the motion also states ISS's president was consulted and was not opposed to the withdrawal. The trial court granted the amended motion to withdraw on September 6. There is no record of any objection to the motion or a continuance for time to obtain new counsel.

The case proceeded to trial on September 11, 2007. Neither ISS, nor Mr. Bell appeared in person or through counsel despite having received notice of the setting. Avago introduced evidence of both opposing parties' breach through affidavit testimony and exhibits. The trial court entered a default judgment in Avago's favor immediately following trial. The judgment imposes joint and several liability for Avago's pre-payment, travel expenses, pre-judgment interest, and attorneys fees, as well as awarding exemplary damages.[2] ISS filed its notice of restricted appeal on March 10, 2008.

To prevail on a restricted appeal, an appellant must establish: (1) the notice of appeal was filed within six months after the judgment or order appealed from was signed; (2) the appellant was a party to the underlying suit; (3) the appellant did not participate in the actual trial of the case; and (4) the error complained of must be apparent on the face of the record. *See* TEX.R.APP.P. 26.1(c); *Norman Communications v. Tex. Eastman Co.*, 955 S.W.2d 269, 270 (Tex. 1997). In this case, the parties do not dispute that the first three criteria have been met. The disputed issue is whether there is trial court error on the face of the record.

We review the granting of a motion to withdraw for an abuse of discretion. *Gillie v. Boulas*, 65 S.W.3d 219, 221 (Tex.App.--Dallas 2001, pet. denied). A court abuses its discretion by granting a motion to withdraw that fails to satisfy the requirements of Rule 10 of the Texas Code of Civil procedure. *Id.*

An attorney may withdraw from representation of a client upon written motion for good cause. TEX.R.CIV.P. 10; *see Rogers. v. Clinton*, 794 S.W.2d 9, 10 n.1 (Tex. 1990). If no counsel is substituting for the withdrawing attorney, counsel's motion must state, "that a copy of the

---

[2] Mr. Bell did not appeal the judgment and is not a party here.

motion has been delivered to the party; that the party has been notified in writing of his right to object to the motion; whether the party consents to the motion; the party's last known address and all pending settings and deadlines." TEX.R.CIV.P. 10.

The amended motion to withdraw states that a written copy was delivered to ISS by both certified and regular mail. The motion states that ISS was notified of its right to object to the withdrawal, and includes a letter addressed to ISS dated August 17, 2007, in which the attorneys informed the client of their intent to withdraw, and advised ISS of its right to object to the motion. The motion also represented to the trial court that the attorneys had conferred with the President of ISS, and that he had consented to the withdrawal on the company's behalf. ISS's last known address is stated in the body of the motion, and the motion clearly states that there was a trial setting scheduled for September 11, 2007. There is no record that ISS exercised its right to object, nor did ISS file a motion for continuance. We conclude that the amended motion to withdraw satisfied the requirements of Rule 10.

However, ISS also argues the trial court abused its discretion by granting the motion because the motion failed to comply with certain aspects of Dallas Local Rule 4.02, and because the motion failed to list a discovery dispute hearing scheduled to take place the same day as trial. We are not persuaded that either of these grounds renders the trial court's ruling an abuse of discretion. As ISS points out, Dallas Local Rule 4.02 by its own language is intended to act merely as a supplement to the requirements of Rule 10. While the trial court may well have been within its discretion to deny the motion on the basis that it violated the local rule, it did not abuse its discretion by granting a motion which was otherwise in compliance with Rule 10.

With regard to ISS's final argument, again we conclude the trial court was within its

discretion to grant the motion despite its failure to specify the fact that a discovery hearing was also scheduled to take place on the day of trial. There is no question, based on the record before us, that ISS had notice that its representatives needed to be in court on September 11, 2007. The setting had been scheduled by the parties' Rule 11 agreement, the trial setting was entered in the record by the trial court's order, and ISS was notified by its attorneys as part of the withdrawal process. ISS did not object, attempt to object, or move for a continuance prior to trial. The trial court did not abuse its discretion by granting the amended motion to withdraw. Accordingly, there is no error on the face of the record, and we overrule Appellant's issue.

We affirm the trial court's judgment.

June 30, 2009

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.